IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-1480-WJM-STV

ADAM FEDERSPILL,

    Plaintiff,

v.

DENVER PUBLIC SCHOOLS,

    Defendant.

---

**ORDER ADOPTING JANUARY 22, 2020 RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court on the January 22, 2020 Recommendation of United States Magistrate Judge Scott T. Varholak (ECF No. 199) that Defendant Denver Public Schools' ("DPS") Motion for Summary Judgment ("Motion") (ECF No. 187) be granted. For the reasons set forth below, the Recommendation is adopted in its entirety, and DPS's Motion is granted.

## I. BACKGROUND

Plaintiff Adam Federspill is a former employee of DPS, having served as a school counselor at the PUSH Academy ("PUSH") from August 2014 until his resignation in October 2016. Federspill is white, and brings claims against DPS under Title VII for reverse race discrimination, hostile work environment, and retaliation. The following facts giving rise to such claims are set forth below, and are undisputed unless otherwise noted.

In August 2014, Federspill was hired as a school counselor by PUSH's principal,

Angela Robertson, who is black. (ECF No. 199 at 2.) For reasons unstated by either party, in January 2015, a DPS human resources employee, Allison Hamel, contacted Federspill and requested a meeting. (*Id.*) At this meeting, Federspill complained that he had been told by a PUSH colleague that Robertson had, outside of Federspill's presence, spoken negatively about white people and referred to Federspill as a "typical, lazy, white, entitled cracker." (*Id.* at 3.) Federspill also presented Hamel with a typewritten list of concerns about PUSH management and various administrative issues, including without limitation inadequate record keeping, but none of which concerned race discrimination. (*Id.* at 2.)

Shortly thereafter, DPS began an investigation into Robertson's racial comments that was led by Dana Risch, a Senior Employee Relations Investigator. (*Id.* at 3.) Apparently because she could not verify that Robertson had actually made the comment at issue, Risch determined that Robertson had not violated school district policy. (*Id.* at 4.)

Simultaneously, DPS conducted an investigation into allegations of improper record keeping at PUSH.[1] (*Id.*) At the conclusion of this investigation, DPS determined that certain procedures involving transcripts, scheduling, and staff qualifications were inadequate. (*Id.* at 4–5.) DPS then implemented a remedial plan, which included removing "scheduling rights" from all PUSH employees, and transferring those rights to a central administrative employee (who was white). (*Id.* at 5.) Plaintiff's scheduling rights later were returned to him. (*Id.*)

---

[1] Federspill asserts that this investigation did not occur, but does not provide evidence to support this assertion.

At some point during the 2014–2015 school year, Plaintiff applied to become a member of DPS's Assistant Principal Hiring Pool ("AP Pool"). (*Id.* at 6.) Becoming a member of the AP Pool is a prerequisite to being considered for an assistant principal position. (*Id.*) The AP Pool was managed by Laura Cotsapas, who oversaw a team of current and former principals and human resources professionals who reviewed candidate applications. (*Id.*) Cotsapas's team was independent of any particular school, administrator, or employee.[2] (*Id.*) Plaintiff's application was denied. (*Id.* at 6–7.)

In May 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination, a hostile work environment, and retaliation. (*Id.* at 7.) The charge referenced, among other things, Robertson's alleged "cracker" comment, the temporary removal of Federspill's scheduling rights, and Federspill's rejection from the AP Pool. (*Id.*)

At the beginning of the 2015–2016 school year, Principal Robertson, Assistant Principal Karen Powell, and DPS's Director of Counseling Support Services, Samantha Haviland, decided to alter Federspill's job responsibilities. (*Id.* at 8.) In an August 2015 meeting, they informed Federspill that he was no longer responsible for scheduling, testing, or class registration, and that his position would now focus on college counseling and personal education plans. (*Id.*) Two or three weeks later, however, Plaintiff's scheduling rights were returned to him. (*Id.*)

In December 2015, Robertson made a Ku Klux Klan ("KKK") reference while

---

[2] Federspill disputes this as well, but again does not point the Court to any evidence in doing so.

addressing PUSH faculty, including Federspill. (*Id.*) Robertson allegedly was discussing student attire for the year's graduation ceremony and stated something to the effect of: "Hoods . . . I am from Louisiana and when someone says 'hood,' we start running. . . . Look at all the white people looking at the floor." (*Id.* at 9.) In January 2016, DPS opened an investigation into Robertson's behavior, again led by Risch, and Robertson was placed on administrative leave. (*Id.*) In March 2016, at the conclusion of the investigation, Robertson either was terminated, or resigned from employment with DPS. (*Id.*)

During the 2015–2016 school year, Federspill again applied to the AP Pool. (*Id.* at 10.) Federspill was interviewed for the AP Pool in March 2016, but again was not selected. (*Id.* at 10–11.) In April 2016, Federspill filed a second charge of discrimination with the EEOC, again alleging race discrimination, a hostile work environment, and retaliation. (*Id.* at 11.) This second charge referenced, among other things, Robertson's KKK reference, and Federspill's loss of administrative duties and failed application for admittance into the AP Pool. (*Id.*)

In September 2016, DPS notified Federspill that it would reduce his position to part-time starting in October 2016. (*Id.*) According to DPS, the impetus for this change was the fact that fewer students had enrolled at PUSH for the 2016–2017 school year than had been anticipated. (*Id.* at 11–12.) As a result, DPS allocated less funding to PUSH, which in turn required PUSH to make staff reductions. (*Id*. at 12.) Federspill resigned on October 4, 2016. (*Id.*)

On June 19, 2017, Federspill, proceeding *pro se*, filed the instant lawsuit, bringing several claims under Title VII and claims for civil conspiracy, assault,

defamation, and torture. (ECF No. 1.) On October 4, 2018, the Court granted DPS's Motion to Dismiss as to all claims except for the discrimination, retaliation, and hostile work environment claims. (ECF No. 128.)

On September 27, 2019, DPS filed the instant Motion. (ECF No. 187.) On October 23, 2019, Federspill filed a Response (ECF No. 189), and on November 7, 2019, DPS filed a Reply (ECF No. 191). On January 22, 2020, the Magistrate Judge issued his Recommendation that Defendant's Motion be granted. (ECF No. 199). On January 27, 2020, Plaintiff filed an Objection to the Recommendation (ECF No. 200), and on February 10, 2020, Defendant filed a Response to Plaintiff's Objection (ECF No. 202).

## II. LEGAL STANDARDS

### A. Review of a Magistrate Judge's Recommendation

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

5

**B.     Motion for Summary Judgment**

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000).  The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III.  ANALYSIS

The Magistrate Judge initially determined that Federspill has abandoned his Title VII discrimination and hostile work environment claims.  (ECF No. 199 at 16–17.)  Federspill did not object to this aspect of the Recommendation.  (*See* ECF No. 200 at 1.)  Finding no clear error, the Court adopts the Recommendation in this respect and concludes that the only remaining claim in this action is Federspill's Title VII retaliation claim.

The Magistrate Judge further concluded that because Federspill has failed to come forward with direct evidence of retaliatory animus, his retaliation claim must satisfy the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  (ECF No. 199 at 27.)  The judge found that with respect to each alleged instance of retaliation, Federspill has failed to establish a genuine issue of fact as to

6

causation—an element of *prima facie* retaliation claims under *McDonnell Douglas*. (*Id.* at 29–35.) The Magistrate Judge also determined that, even had Federspill established fact issues as to the elements of a *prima facie* claim, he had not done so with respect to the final (and often dispositive) element of a *McDonnell Douglas* claim—pretext. (*Id.* at 35–40.)

Federspill's Objection to the Recommendation reads in relevant part:

> 1. I engaged in a protected activity in reporting racism, harassment, hostile work environment and discrimination, which [Defendant] admits occurred.
>
> 2. My employer, [Defendant], took MANY actions against me.
>
> 3. There is an extreme causal link between my reporting discrimination and [Defendant]'s actions against me.

(ECF No. 200 at 1.)

The Court considers Federspill's Objection to be sufficiently specific to trigger *de novo* review only as to the Magistrate Judge's determination that there is no genuine issue of fact as to causation. With respect to causation, the Court agrees with the Magistrate Judge and concludes that Federspill has failed to establish a triable fact issue as to the causal link required by *McDonnell Douglas*.[3]

**A.    Causation**

"[A] plaintiff making a retaliation claim under [Title VII] must establish that his or

---

[3] The Court notes that, because the Magistrate Judge determined that Federspill has failed to establish a fact issue as to pretext under *McDonnell Douglas*, and because Federspill did not specifically object to that aspect of the Recommendation, whether Federspill has established a fact issue as to causation is immaterial. Nevertheless, out of a desire to thoroughly and completely address Federspill's claims, the Court will conduct a *de novo* review of the Recommendation with respect to causation.

7

her protected activity was a *but-for cause* of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 363 (2013) (emphasis added). "[U]nless the [adverse action] is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (emphasis removed). "A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient." *Id.* Moreover, "evidence of temporal proximity has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1001–02 (10th Cir. 2011).

1. Removal of Federspill's Scheduling Rights

Federspill seems to contend that his complaint to Hamel about Robertson's "cracker" comment was the cause of the temporary removal of his scheduling rights, or the cause of those rights not being returned quickly. (ECF No. 189 at 8.) Federspill is unable, however, to offer any evidence, other than his own responses to DPS's interrogatories, to corroborate this belief. (*See id.*) While temporal proximity between protected activity and adverse action alone can be sufficient to infer causation, Federspill does not attest to, and it is not otherwise clear, precisely when his scheduling rights were removed (or returned).

Moreover, while Federspill denies that his complaint to Hamel caused DPS to investigate administrative problems in PUSH, DPS has provided evidence that this

investigation did in fact occur, and Federspill has offered nothing in rebuttal. This investigation constitutes an intervening event that weakens the asserted causal link between Federspill's protected activity and the removal of his scheduling rights. *See Twigg*, 659 F.3d at 1001–02.

Indeed, Federspill concedes that the scheduling rights of *all* PUSH faculty members, including Robertson's, were removed. (*Id.* at 7.) The fact that the removal of scheduling rights was done systematically—that is, in a way that did not specifically target Federspill, virtually forecloses an inference of causation here. In light of the undisputed fact that the scheduling rights of all faculty and staff members were removed, and in the absence of any evidence probative of the causal connection Federspill asserts, no reasonable juror could conclude that Federspill's complaint to Hamel was a but-for cause of his scheduling rights being removed.

2. <u>Federspill's Failed Applications for Admittance into the AP Pool</u>

   a. *2014–2015 School Year*

Federspill argues that his complaint to Hamel was the cause of the denial of his application to the AP Pool during the 2014–2015 school year. (*Id.* at 10.) Again, however, Federspill does not point to any evidence supportive of this assertion. (*See id.* at 10–13.) It appears as though Federspill was not rejected from consideration until late March 2016, over two months after he complained of Robertson's comment. (*See* ECF No. 187-7 at 14.) Such temporal relationship between Federspill's complaint and the denial of his application, in the Court's view, is insufficient by itself to create a genuine issue of fact as to causation. *Cf. Twigg*, 659 F.3d at 1001–02. Moreover, DPS has proffered documentary and testimonial evidence which supports its assertion that

9

Federspill was rejected based on his qualifications, not his complaint about Robertson. (*See* ECF No. 187-7.) Accordingly, no reasonable juror could conclude that Federspill's complaint to Hamel was a but-for cause of the denial of his AP Pool application during the 2014–2015 school year.

    b.  *2015–2016 School Year*

  Federspill argues that his protected activity (he does not specify precisely what conduct) was the cause of the denial of his application to the AP Pool during the 2015–2016 school year. (*Id.* at 20.) Unlike in the previous year, this time, Federspill was interviewed for the AP Pool. (*Id.*) Federspill, citing the declaration of Laura Cotsapas, states that he was treated less favorably than other interviewees because he was only interviewed by one person, where as the others were interviewed by a panel. (*Id.*) Nowhere in Cotsapas's declaration, however, is there a mention of this. (*See* ECF No. 187-7.)

  To the extent Federspill argues that his January 2015 complaint about Robertson was the cause of the denial of his application the following school year, Federspill has provided absolutely no evidence of this assertion, and given the remarkably long temporal gap between the protected activity and the adverse action, his failure to do so is fatal to this claim. Similarly, if Federspill is arguing that his May 2015 EEOC charge of discrimination was the cause, he must again explain away what appears to be almost a full year between the filing of the charge and the denial of his application. This he fails to do; nor does he point the Court to any evidence that would otherwise support an inference that his application was denied on that basis.

Further, as with respect to Federspill's 2014–2015 AP Pool application, DPS has provided evidence which supports its assertion that Federspill's 2015–2016 application was denied because he was found to be unqualified—not because he had engaged in anything that reasonably could be considered protected activity. (*See* ECF No. 187-7.) Consequently, no reasonable juror could conclude that Federspill's AP Pool application during the 2015–2016 school year was denied because he engaged in protected activity.

3. <u>August 2015 Alteration of Federspill's Job Responsibilities</u>

Federspill argues that his job responsibilities were altered in August 2015 because he engaged in protected activity. As the Magistrate Judge points out, Federspill fails to offer evidence in support of the proposition that this allegedly adverse action was taken in response to protected activity. The most temporally proximate protected activity Federspill engaged in apparently was his May 2015 EEOC charge of discrimination, which occurred roughly three months before his job responsibilities were altered. Thus, temporal proximity alone is insufficient to create an inference of causation as to this theory of liability. *See Meiners*, 359 F.3d at 1231.

Federspill's only specific contention in this respect is that Haviland, who was involved in the decision to alter his job responsibilities, was not being truthful when she testified that she was unaware at the relevant times that Federspill had made any kind of complaint regarding Robertson or race discrimination at PUSH more generally. Federspill, however, does not offer evidence in support of this assertion.

For its part, DPS has produced evidence to support its assertion that Federspill's job responsibilities were altered because of concerns that he was spending too much

time on administrative duties, at the expense of his more substantive duties as a school counselor. (*See* ECF No. 187-10.) Federspill has failed to rebut this evidence in any way. As a result, there is no genuine issue of fact as to causation with respect to this adverse employment action.

    4.    <u>September 2016 Reduction of Federspill's Hours</u>

Federspill further contends that his position was reduced to part time in retaliation for his engaging in protected activity. Preliminarily, the protected activity closest in time to this adverse action apparently is Federspill's April 2016 EEOC charge of discrimination. Federspill's hours were reduced approximately five months after; thus, Federspill must come forward with some additional evidence of causation. *See Meiners*, 359 F.3d at 1231.

Federspill asserts that, as a matter of DPS policy, faculty and staff members must be notified, at the latest, in February of the year preceding that in which their hours would be reduced. He argues that DPS's alleged flouting of this policy is evidence that his hours were reduced for a more sinister reason. But Federspill has not proffered evidence to establish the existence of such a policy.

According to DPS, PUSH budgeted for an enrollment of 196 students for the 2016–2017 school year, and only 110 ultimately enrolled. DPS contends, and has offered evidence to support the proposition, that the resulting budget cut required PUSH to make staff reductions and otherwise cut costs, which included reducing Federspill's hours. (*See* ECF No. 187-1.) Federspill denies that this is true, but again, he provides no evidence to support that assertion.

Federspill contends that it doesn't make sense for his position to be reduced to

12

part time "when there was a principal, assistant principal, instructional dean, and behavioral dean at the school," but does not explain why that does not make sense. Federspill, citing to the Colorado Department of Education's website, asserts that a similar school in the DPS system, "Legacy," employed a full time counselor during the 2015–2016 school year with an enrollment of only 60 students. As the Magistrate Judge points out, however, the website to which Federspill directs the Court does not say what he says it says—it merely indicates, in an "Innovation Plan" for a potential new school (Legacy), that it planned to hire one school counselor, and that an enrollment of 60 students was anticipated in its first year, the 2015–2016 school year. (*See* ECF No. 189 at 22, 32 (citing *Legacy Options High School Innovation Plan*, http://cde.state.co.us/choice/legacy-innovation-plan (last visited April 6, 2020)).)

In any event, even if the Innovation Plan did establish what Federspill asserts that it does, this alone would plainly be insufficient to create a fact issue as to whether Federspill's protected activity was a *but for cause* of his reduction in hours. Federspill has otherwise offered no evidence in support of his argument that his hours were reduced in response to his protected activity. As such, Federspill's retaliation claim arising out of his September 2016 reduction in hours must fail.

\* \* \*

In sum, Federspill has failed to establish a genuine issue of fact as to causation with respect to any of his theories of liability on his Title VII retaliation claim. This is fatal to the claim, and Federspill's Objection to the Recommendation accordingly is overruled; the Recommendation is adopted in its entirety. DPS's Motion will be granted, and judgment will be entered in its favor.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff Federspill's Objection to the Recommendation (ECF No. 200) is OVERRULED;

2. The Recommendation (ECF No. 199) is ADOPTED in its entirety;

3. Defendant DPS's Motion for Summary Judgment (ECF No. 187) is GRANTED; and

4. The Clerk shall enter judgment in favor of DPS and terminate this case. Parties shall bear their own costs.

Dated this 13th day of April, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge